# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**CHARLES PRUITT, JR.**                                                   **PLAINTIFF**
**ADC #091574**

**V.**                                   **NO. 3:24-cv-186-DPM-ERE**

**SANDRA LAKE and**
**MAJORIE PARROTT HALL**                                          **DEFENDANTS**

## RECOMMENDED DISPOSITION

### I.    Procedure for Filing Objections

This Recommended Disposition ("RD") has been sent to United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this RD. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within 14 days of the date of this RD. If you do not file objections, you may waive the right to appeal questions of fact.

### II.    Background

*Pro se* plaintiff Charles Pruitt, Jr., an Arkansas Division of Correction ("ADC") inmate, filed this 42 U.S.C. § 1983 case. *Doc. 2*. Mr. Pruitt is currently proceeding on medical deliberate indifference claims against Defendants APN/Health Services Administrator Sandra Lake and LPN/Health Services

Administrator Majorie Parrott Hall in their individual and official capacities seeking declaratory, monetary, and injunctive relief.[1]

On February 11, 2026, Mr. Pruitt filed a motion for summary judgment.[2] *Doc. 64.*

On February 13, 2026, Defendants filed a motion for summary judgment, a brief in support, and a statement of undisputed facts. *Docs. 66, 67, 68.* Mr. Pruitt has responded to Defendants' motion, which is now ripe for review. *Docs. 70, 71.*

For the following reasons, I recommend granting Defendants' motion for summary judgment (*Doc. 66*) and denying Mr. Pruitt's motion for summary judgment (*Doc. 64*).

---

[1] The Court previously dismissed Mr. Pruitt's claims against ADC Deputy Director Aundrea Culclager based on his failure to state a constitutional claim for relief against Defendant Culclager. *Doc. 33.*

As explained below, Defendants are entitled to judgment as a matter of law on Mr. Pruitt's individual capacity claims. As a result, Mr. Pruitt's official capacity claims also fail because there is no underlying constitutional violation to support them. In addition, Mr. Pruitt fails to allege that he suffered any constitutional injury as a result of a Wellpath policy, plan, or custom. *Burke v. North Dakota Dept. of Corrs. & Rehab.*, 294 F.3d 1043, 1044 (8th Cir. 2002). A corporation can be held liable only if it had unconstitutional policies or practices that caused Mr. Pruitt's injuries. *Id.*; *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006); *Sanders v. Sears Roebuck & Co.*, 984 F.2d 972, 975-976 (8th Cir. 1993).

[2] In his motion for summary judgment, Mr. Pruitt fails to make any argument regarding why he is entitled to judgment as a matter of law on the claims raised in this lawsuit, rather he only refers to specific evidence that he filed with the Court. *Doc. 63.* I have reviewed that evidence and include it in my analysis of Mr. Pruitt's medical deliberate indifference claims. See Section III, B. Factual Evidence.

### III.    Discussion

#### A.    Summary Judgment Standard

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must come forward with specific facts demonstrating that there is a material dispute for trial. See FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). A party is entitled to summary judgment if -- but only if -- the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

#### B.    Factual Evidence[3]

On May 16, 2023, at the North Central Unit, Defendant Lake examined Mr. Pruitt, who complained of reeling and cracking on his right hand and left foot.

---

[3] Unless otherwise noted, these facts are from: (1) Dr. Nicholas Gowen's affidavit (*Doc. 68-4*); and (2) Mr. Pruitt's medical records. *Docs. 63*; *68-1* through *68-3*; *68-4* through *68-13*.

Defendant Lake noted dry cracking skin and ordered Absorbase ointment. *Doc. 68-1 at 1*.

On August 7, 2023, Mr. Pruitt was transferred to the Ester Unit.[4]

On August 15, 2023, non-party Dr. Ronald Stukey saw Mr. Pruitt at a chronic-care visit and noted that Mr. Pruitt's condition was stable and that he was "generally well." *Doc. 68-2 at 1-2*. Dr. Stukey ordered medications and follow-up lab tests. *Id*.

On October 2, 2023, non-party LPN Gary Landreth saw Mr. Pruitt during sick call for skin complaints. *Doc. 63 at 22-23*. Nurse Landreth noted, "treatment not working[,] area getting worse on Right hand and Left foot[,] and skin peeling off bumps under skin."[5] *Id. at 23*. Nurse Landreth referred Mr. Pruitt to the provider. *Id*.

On October 4, 2023, Dr. Stukey evaluated Mr. Pruitt for complaints of a rash on his right hand and the left sole of his foot. *Doc. 68-3 at 1*. Dr. Stukey noted moderate thickening and some scaling to Mr. Pruitt's right palm and left sole of the foot with occasional darkened spots. *Id*. Dr. Stukey ordered Triamcinolone Acetonide for treatment of possible dyshidrotic eczema. *Id*.

On November 14, 2023, Nurse Landreth saw Mr. Pruitt at a sick-call visit. *Doc. 63 at 89*. During that encounter, Mr. Pruitt complained that Dr. Stukey

---

[4] Although Defendants do not cite any evidence to support this factual allegation, Mr. Pruitt does not contest this fact (*Doc. 71 at 2*), nor is it material to the facts at issue.

[5] Mr. Pruitt's medical records do not specify whether those complaints were made by Mr. Pruitt or whether those notations were Nurse Landreth's personal observations.

"erroneously" concluded that his skin complaints were stress related. *Id*. Nurse Landreth instructed Mr. Pruitt to "follow up as needed." *Id*.

On November 16, 2023, Dr. Stukey saw Mr. Pruitt during a chronic-care visit and noted that Mr. Pruitt was clinically stable. *Doc. 68-5 at 1*.

On December 21, 2023, Mr. Pruitt had an interactive telemedicine encounter with non-party David Ford. *Doc. 63 at 49*. During that encounter, Mr. Pruitt again complained about a fungal infection on his hands. Medical staff referred Mr. Pruitt to an on-site provider for a skin exam. *Id*.

On December 28, 2023, Dr. Stukey examined Mr. Pruitt for complaints of a possible fungal infection. *Doc. 68-6 at 1*. Dr. Stukey noted small blisters on Mr. Pruitt's palms consistent with dyshidrotic eczema. *Id*. He ordered Betamethasone Diproplonate cream, encouraged Mr. Pruitt to avoid scratching the "blister like areas," and explained why the lesions were not fungal. *Id*.

On January 24, 2024, non-party Dr. Shawn Anderson saw Mr. Pruitt at a follow-up visit. *Doc. 68-7 at 1*. Dr. Anderson noted that Mr. Pruitt's rash was consistent with dyshidrotic eczema and ordered continuation of Absorbase and Betamethasone. *Id*.

On February 12, 2024, Defendant Lake saw Mr. Pruitt at a chronic-care visit. *Doc. 68-8 at 1-3*. Defendant Lake counseled Mr. Pruitt on the continued use of the prescribed creams and ordered a follow-up visit. *Id. at 2*.

On March 8, 2024, non-party Crystal McCay saw Mr. Pruitt during sick-call based on his complaint that the steroids were not "working for this fungus." *Doc. 63 at 92*. Nurse McCay noted "no black areas [] today" and scheduled an appointment for Mr. Pruitt to be seen by the provider. *Id*.

On March 12, 2024, Defendant Lake saw Mr. Pruitt during a sick-call visit. *Doc. 63 at 70*. She noted "dry cracked skin to bilateral hands" and recommended that Mr. Pruitt use Absorbase "after each hand washing." *Id*.

On April 1, 2024, non-party Dr. Michael Brinson conducted an interactive telemedicine appointment with Mr. Pruitt.[6] *Doc. 63 at 100*. Dr. Brinson noted one "questionable" white pustule on Mr. Pruitt's right hand, but no obvious rash. *Id*. Dr. Brinson provided Mr. Pruitt Doxycycline and Urea cream and advised Mr. Pruitt that, if the area had not healed in two weeks, he should contact Ms. Griswold to set up a dermatology consultation. *Id*.

On April 24, 2024, Nurse Miller saw Mr. Pruitt at sick call. *Id. at 103*. Mr. Pruitt again complained about the "rash to bilateral hand, left arm, and tip of penis." *Id*. Nurse Miller provided Mr. Pruitt Hydrocortisone cream and Tolnaftate and referred him to be examined by the provider. *Id*.

---

[6] Although Mr. Pruitt's medical records do not specify that Michael Brinson is a physician, he repeatedly refers to Dr. Brinson in his response to Defendants' motion for summary judgment. *Doc. 70*. For purposes of this Recommendation, I will assume that Michael Brinson is a physician.

On April 29, 2024, Defendant Lake saw Mr. Pruitt based on his complaints of a rash on his penis and buttocks. However, Mr. Pruitt reported that the areas had resolved before the appointment. *Doc. 68-9 at 1*.

On May 7, 2024, Mr. Pruitt presented to sick-call with complaints of a rash to his left inner forearm. *Doc. 63 at 105*. Nurse McKay noted small, raised pustules and provided him antifungal cream. *Id*.

On June 3, 2024, Defendant Lake saw Mr. Pruitt at a chronic care visit. *Doc. 68-10 at 1-3*. Mr. Pruitt denied any skin rashes. *Id. at 1*. Defendant Lake renewed Mr. Pruitt's medications, including Absorbase, and ordered follow-up labs. *Id. at 2*.

On July 25, 2024, non-party Christina Miller saw Mr. Pruitt during a sick-call visit. *Doc. 63 at 53*. Mr. Pruitt complained about a fungus spreading through his body. *Id*. Ms. Miller noted "[n]o visual abnormalities noted at this time" and referred Mr. Pruitt to the provider. *Id*.

On July 30, 2024, Defendant Lake saw Mr. Pruitt for complaints of a "fungus ru[n]ning through his body." *Doc. 68-11 at 1*. Upon examination, Defendant Lake noted no black spots or rashes on Mr. Pruitt's body. Mr. Pruitt explained that he would have a rash at the time he submitted a sick-call request but, by the time ADC medical staff examined him, the rash would have healed. *Id*. Defendant Lake encouraged Mr. Pruitt to seek follow-up care as needed. *Id*.

On August 26, 2024, Mr. Pruitt refused a chronic care visit. *Doc. 68-12 at 1*.

On September 3, 2024, non-party APN Debroah Gatliff saw Mr. Pruitt at a chronic care visit. *Doc. 68-13 at 1-2*. APN Gatliff noted no skin issues and ordered continuation of Mr. Pruitt's medications. *Id.*

On October 7, 2024, Mr. Pruitt filed his complaint in this matter. *Doc. 2*.

## C.    Mr. Pruitt's Complaint Allegations

Mr. Pruitt's complaint alleges that when he was taken into ADC custody, he suffered from a fungal infection. *Doc. 2 at 4*. He explains that he was scheduled to be seen by a dermatologist for treatment before he was incarcerated, but that appointment was rescheduled due to COVID-19 restrictions. *Id.*

Mr. Pruitt complains that medical staff failed to promptly treat this skin infection causing the fungus to "eat[] away" at his muscles and skin and resulting in skin and nerve damage. *Id. at 5, 9*. In addition, he alleges that Defendant Lake failed to: (1) accurately document her observations in Mr. Pruitt's medical records; and (2) order the proper tests. *Id. at 7-8*. Mr. Pruitt further complains that, although he was supposed to see another physician for follow-up care, "they (Well Path) refused to reschedule, instead sending me only to Ms. Lake . . . as if in retaliation for filing grievances."[7] *Id. at 9*.

---

[7] To the extent that Mr. Pruitt seeks to assert a retaliation claim against any Defendant, this claim fails. To state a retaliation claim, Mr. Pruitt must allege that: (1) he engaged in constitutionally protected activity; (2) the particular Defendant took adverse action against him that would chill a person of ordinary firmness from engaging in that activity; and (3) retaliation was a motivating factor for the adverse action. *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007). "[A]n inmate cannot immunize himself . . . merely by filing [grievances] and then claiming

Finally, Mr. Pruitt explains that Defendant Hall is liable because of her involvement in the grievance process.[8] *Id. at 9.*

### D.    Mr. Pruitt's Response to Defendants' Motion

In responding to Defendants' motion for summary judgment, Mr. Pruitt argues that Defendants violated his constitutional rights by: (1) falsifying his medical records; (2) failing to provide him medical treatment for shortness of breath, mouth sores, pain, and suffering; (3) failing to provide him medication for a toothache for a week in June 2024 in retaliation for his use of the grievance procedure; (4) failing to schedule him for a follow-up visit with a dermatologist; (5) failing to adhere to dermatologists' orders; and (6) failing to properly investigate his symptoms to make informed decisions regarding his medical treatment.[9] In addition,

---

that everything that happens to him is retaliatory." *Rienholtz v. Campbell*, 64 F. Supp. 2d 721, 733 (W.D. Tenn. 1999) (internal citation omitted). "If that were so, then every prisoner could obtain review of non-cognizable claims merely by filing a lawsuit or grievance and then perpetually claiming retaliation." *Id.*

Mr. Pruitt's complaint alleges that medical staff refused to have him evaluated by an outside physician in retaliation for his use of the grievance procedure. However, Mr. Pruitt does not allege any facts to support his conclusory assertion that any named Defendant was motivated by unlawful retaliation. See also 42 U.S.C. 1983; 42 U.S.C.A. § 1997e(c) ("The court shall on its own motion . . . dismiss any action brought with respect to prison conditions under section 1983 . . . by a prisoner . . . if the court is satisfied that the action . . . fails to state a claim upon which relief can be granted . . . ."); and 28 U.S.C. § 1915(e)(2)(B)(ii) (requiring that the court "dismiss the case at any time" it determines that an in forma pauperis complaint fails to state a claim on which relief may be granted).

[8] To the extent that Mr. Pruitt seeks to hold Defendant Hall liable based on her participation in the grievance process, this claim fails. Participation in the grievance process, alone, is insufficient to establish liability for a constitutional violation. *Rowe v. Norris*, 198 Fed. Appx. 579, *1 (8th Cir. 2006) (unpub. per curiam).

[9] In his response to Defendants' motion for summary judgment, Mr. Pruitt also complains for the first time that, when he was taken into ADC custody, he suffered from a boil on his anus.

9

Mr. Pruitt again explains that, as an administrator, Defendant Hall was fully aware

of his medical conditions through the grievance process and "failed to adequately

respond by correcting the situation of her subordinates."[10] *Id. at 7*.

### E.    Medical Deliberate Indifference

"[D]eliberate indifference to serious medical needs of prisoners constitutes

the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104

(1976) (omitting quotations and citation). At the summary judgment stage, Mr. Pruitt

"must clear a substantial evidentiary threshold" to show that Defendants acted with

deliberate indifference. *Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019). An

inadvertent or negligent failure to provide adequate medical care does not amount to

deliberate indifference.[11] *Id. at 575*. Instead, deliberate indifference requires

---

*Doc. 70 at 5*. However, Mr. Pruitt is not proceeding on a deliberate indifference claim relating to that condition in this lawsuit. Therefore, I will not address such a claim in this Recommendation.

Similarly, Mr. Pruitt complaints regarding the alleged failure to treat his mouth ulcers and to provide him medication for a toothache are not at issue in this lawsuit. Therefore, I also will not address those claims in this Recommendation.

[10] Defendant Hall's supervisory role does not make her legally responsible for the unconstitutional conduct of the employees she supervises. See *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (explaining that, because there is no vicarious liability in § 1983 actions, a prisoner *"must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"*); *Saylor v. Nebraska*, 812 F3.3d 637, 644-45 (8th Cir. 2016) (because a supervisor cannot be held vicariously liable for the constitutional violations of a subordinate, prisoner must "show that the supervisor personally participated in or had direct responsibility for the alleged violations" or "that the supervisor actually knew of, and was deliberately indifferent to or tacitly authorized, the unconstitutional acts"); *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (holding that the "general responsibility for supervising the operations of a prison in insufficient to establish the personal involvement required to support [§ 1983] liability"). Here, because Mr. Pruitt fails to allege that Defendant Hall was personally involved in his medical treatment, he has failed to state a plausible constitutional claim for relief against her.

[11] Mr. Pruitt's complaint also alleges that Defendants' conduct constituted "malpractice."

culpability akin to criminal recklessness, which is more blameworthy than negligence but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Stated another way, Defendants can be held liable only if their actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany*, 132 F.3d at 1240-1241 (citing *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)). "Merely demonstrating that a prison doctor committed medical malpractice is insufficient to establish deliberate indifference." *Jackson v. Buckman*, 756 F.3d 1060, 1065-1066 (8th Cir. 2014) (internal citation omitted). In addition, disagreement with treatment decisions cannot support a deliberate indifference claim. *Barr v. Pearson*, 909 F.3d 919, 921-22 (8th Cir. 2018).

Defendants present the affidavit of Dr. Nicholas Gowen, a practicing hospitalist board certified in internal medicine, who offers proposed expert testimony based on his education, training, and experience. *Doc. 68-4*. Dr. Gowen states that, based on his review of Mr. Pruitt's medical records, the skin irritation to Mr. Pruitt's hands and feet "was consistent with dyshidrotic eczema, a fairly common itchy rash of the [hands] and feet, and not indicative of a fungus infection

---

*Doc. 2 at 11*. To the extent that he asserts a state-law medical malpractice claim, I recommend that the Court decline to exercise any jurisdiction of any such claim. See also 28 U.S.C. § 1367(c)(3) (district court may, once it has dismissed federal claims on which its original jurisdiction is based, decline to exercise jurisdiction over supplemental state law claims).

or rash associated with an infectious disease." *Id. at 1*. Dr. Gowen explains that "there is no curative treatment option" for this condition, and that "[e]mollients and topical corticosteroids are commonly used and often give symptomatic relief for the itching." *Id. at 1-2*. Dr. Gowen further concludes that ADC medical staff, including Defendant Lake, "properly monitored Mr. Pruitt's condition and ordered appropriate lab tests, follow-up visits, consults, and medications," and that "the care and treatment provided to Mr. Pruitt by medical staff in regard to his skin condition from May 2023 to December 2024 was appropriate, adequate, and timely." *Id. at 2*.

Although Mr. Pruitt contests the majority of the allegations in Defendants' statement of undisputed facts and makes several conclusory and speculative statements regarding his medical treatment and the validity of his medical records, he has failed to present any *evidence* to either support his allegations or to dispute Dr. Gowen's medical expertise and opinions. "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that he did not feel he received adequate treatment." *Cejvanovic v. Ludwick*, 923 F.3d 503, 508 (8th Cir. 2019); see also *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (same).

12

In addition, Mr. Pruitt's medical records show that ADC medical staff promptly responded to his medical needs and consistently provided him with medication.

Although Mr. Pruitt may disagree with Defendants' treatment decisions, as stated above, deliberate indifference requires more than a disagreement in treatment. An inmate has no right to a particular or requested course of treatment, and a mere difference of opinion over matters of expert medical judgment or the course of treatment does not amount to a constitutional violation. *Dulany v. Carnahan*, 132 F.3d 1234, 1239-40 (8th Cir. 1997).

On this record, no reasonable factfinder could conclude that any Defendant violated Mr. Pruitt's constitutional rights.

IT IS THEREFORE RECOMMENDED THAT:

1.    Defendants' motion for summary judgment (*Doc. 66*) be GRANTED.

2.    Mr. Pruitt's motion for summary judgment (*Doc. 64*) be DENIED.

3.    Mr. Pruitt's claims against Defendants Sandra Lake and Majorie Parrott Hall be DISMISSED, with prejudice.

4.    Judgment be entered in favor of Defendants Lake and Hall.

5.    The Clerk be instructed to close this case.

DATED 8 April 2026.

_____
UNITED STATES MAGISTRATE JUDGE

13